Please step up and identify yourselves. Looks like you've got an army out there. Your Honor, Thomas Casper, co-counsel for all plaintiffs. Okay. Your Honors, George Sachs, counsel for appellees, Sheriff Dart, and I will be arguing for all appellees. Okay, so you guys basically know, in this case, we'll probably allow you some extra time as long as you don't decide to make it a book, you know, going all afternoon or something. All right, so with that, you can proceed. Your Honors, first of all, I'd like to reserve up to three minutes for rebuttal if necessary. Fine. May it please the Court. Your Honor, I'm here as counsel today for the plaintiffs David Evans III, LaShawn Shaffer, Matthew Goral, Michael Mendez, Milan Stojkovic, and Kevin Bedone, who for the record are present in court today. The court today must contend with a labyrinthine problem that has expanded in scope since this litigation even started, and that began before this litigation started, that the plaintiffs have been calling the circle of no relief that they find themselves in. As this litigation has expanded, the circle has become concentric circles that have gained a dimension, more like a cone. And the problem is this. The plaintiffs were all suspended without pay by the sheriff pending a proceeding before the Cook County Sheriff's Merit Board in all their cases seeking to fire them and end their careers in law enforcement. Goral, Mendez, Stojkovic, and Bedone were suspended without pay in September 2016. David Evans was suspended without pay in February 2017. LaShawn Shaffer was suspended without pay in July 2017. And those dates are very important because the first Taylor decision from this court came down in September 2016, the very month that four of the plaintiffs were suspended without pay by the sheriff. And that fits into where I'm going because one of the central focuses of this case that distinguishes it from Cruz, Lopez, Acevedo, is that the sheriff was undeniably on notice of what had turned out to be, and as our plot in this case, approximately at least 25 defects in the composition of the merit board at the time of plaintiff's case. And he was on notice of this because Taylor, this court had ruled in the first Taylor decision in September 2016. Nonetheless, nothing changed. The plaintiffs were still suspended without pay, four of them. David Evans was suspended in February 2017 without pay. And then when this court issues the second Taylor ruling in May 2017, Sheriff Dort again suspends plaintiff Shaffer without pay in July 2017. And that is the central starting point of our argument, which is the sheriff knew that there was a major problem with the composition, which we submit is an authority-to-act-based problem with this merit board, and on the cases went. The second problem is, despite the guidance of Judge Cohen in the Taylor case in the circuit court, going back, by the way, to fall 2014 when his original order came out, despite this court in September 2016. What did Judge Cohen do? Did Judge Cohen invalidate the board's composition too? Judge Cohen dealt with a single board member, member Rosales, in the Taylor case. And that, by the way. But how did he rule? He ruled that the Taylor decision was void, as I read his work. And then that was appealed to this court, and this court contended with that issue and ultimately agreed in Taylor, but two times, that the decision of Taylor was void, putting the sheriff on notice of this problem. But as we discovered in this case, as plaintiffs discovered in this case, the problems went a host, went levels deeper. And we have pled in this complaint a total of at least 25 separate compositional defects in the board across at least five separate categories of problems. These range from the non-six-year term appointments, paragraph 51, 155 in the class definition, by the way, in the Second Amendment complaint, to non-staggered terms, which are also pled in the Second Amendment complaint, to only having five members on the board between September 2017 and December 2017, which, as we read section 7002 of the Marriott Board Act, the board must have a minimum of seven. And that was... This is not cured by the amended act? The amended act does nothing to cure the problem of the officer suspended without pay until the amended act was passed in December 2017. And that act, as we argue in the brief, is not retroactive. It creates... it can't be retroactive because, well, under the Landgraf analysis, it creates a new substantive right, making it a substantive amendment, not a procedural one. And Landgraf teaches us that, in that case, the statute's not retroactive. But, again, even if... Even if it's not retroactive, they brought, in effect, brand-new charges. We disagree with that because the way the sheriff... I mean new charges by filing in the suburb. In 2018, they filed amended complaints in 2018, which were identical in form and substance, except for having the word amended complaint on it. So they were a continuation of the complaints that had been filed in 2016 for four of the plaintiffs and 2017 for two of the others. So if we assume the first part is void, we have a new complaint with new charges. But it's an amended... Which doesn't go by a retroactive. But the complaint that was filed was an amended complaint. That's the first point. So in 2018, they weren't even... It was a continuation of a case that had been jurisdictionally defective when it was filed to begin with. So it's your position that, notwithstanding the fact that we have a new complaint or that we have a newly comprised board under the amended statute, that the amended complaint relates back to the statutorily infirmed board? That's correct. And it matters particularly because, remember, our officers suffered real losses up to the filing and continuation of this case in 2018. They were suspended without pay. Okay. We should talk about the back pay. But before we do that, to the point you're making right now, your point is that the original charges were defective because there was no board to hear them, right, in a nutshell. And amending charges, even if you tried to relate them back, you related them back to a null action. So that makes the... that infects the amended charges, too. That is our position. I don't think that's so unusual. Well, but in Taylor, Percy Taylor had a whole case under a board that was found to be unlawful. And the remedy at that point, according to this court, was not to say, you're free to go, you won. It was to say, go back and try your case again before a new board. So they didn't seem to adopt that position. Isn't what you're saying inconsistent with what happened in the Taylor? It's not, because the other key factor about this case is these are officers who hadn't been fired yet. They had pending cases at the board. There had been no final adjudicated decision. Officer Taylor, when this happened to him, he raised it after he was fired. There was no board case. The board had lost jurisdiction over his case. And he raised it, if I may, rather late in the game on reconsideration in his ARL case. Yeah, but who cares when he raised it? I mean, we're not talking about the de facto officer. We're talking about what happens, you know, can you be recharged validly after you were prosecuted by an invalid board? And under Taylor, I think the answer is yes, you can. So, to be clear, we are not taking the position that the sheriff would not pursue discipline at some point in this case. We are not taking that position. We are saying that the way the original complaint was filed before an infirm board that did not have authority to act, the amended complaint that was later filed in 2018 is just a continuation of a board that never had jurisdiction. And remember, Section 7. Is it because the word amended appeared in it? Is that the problem? Well, the problem is. I mean, if you're saying he does have the right to validly charge his people, isn't that the time? Even you would agree he has the right to validly charge them when there's a new board or someone to a new statute. But that does nothing to cure the gap in time where he. Okay, fine, fine. That's a different argument. That's separate. That's separate. I see it that way, too. I see it as separate. Let's talk about this back. I think this goes to your back pay claim, right? Right. As I understand your back pay claim, it's a little difficult to understand from the complaint, but your brief helped. But I just want to make sure I got this. Your argument is that under the old Section 7.11, 7D.11, Sheriff Darden could not suspend someone for more than 30 days. Correct. Unless he charged them and put them into that hearing process under 7D.12. That's what 7D.11 used to say, right? I respectfully disagree. 7D.11 limited his authority to suspend without pay to 30 days, period. And it had no exception language for unless he were going to file with the board. But under the due process analysis in Loudermill, and these are cited in the briefs, the way this is supposed to work under the counsel, it says he could suspend for a time not exceeding 30 days without complying with provisions of 7D.12. Meaning that if he complies with 7D.12, he can suspend. What I took this to mean is if it's going to be a smaller sort of suspension, 30 days or less, it's never fun to be suspended, but less than 30 days isn't the end of the world, maybe. So for those kind of smaller suspensions, you don't have to go through the hearing process. You don't have to charge him. You don't have to have a merit board. He can just do that. But if he's going to suspend for more than 30 days, okay, well, that's more serious because that could be up to, it could be expulsion. It could be up to nine months, whatever. Much more serious penalty. For those things, you have to go through the board. Am I reading this wrong? I'm with you so far. Okay. And so your argument is that that statute was in existence when each of these plaintiffs was suspended. And when I think each of those was suspended, it was for more than 30 days, and the sheriff tried to file charges to comply with the statute, but those charges couldn't be deemed actually filed because there was no board to hear them. That's a way of putting my argument. I think that's correct. And so, therefore, you're claiming anything after 30 days, they're entitled to reinstatement. On day 31, they're entitled to a reinstatement, and then obviously they're entitled to pay. Where the board is jurisdictionally infirm as here. Yes, that's our argument. Because under Taylor, that board had no authority. Correct. Okay. And what exception to the exhaustion requirement allows you to bring that claim right now? Well, there are several exceptions. First of all, the case law is cited in the brief, and I'll just start with Castaneda, which it just gives us that nice summary paragraph, which is why we're citing it. You do not have to comply with exhaustion when the attack is on the authority of the agency to act in the first instance. So that goes all the way. So that's what you're saying this is? One of them. Because part of your argument is the board didn't have authority. But you're saying more than that. You're saying, and because of that, I was entitled to reinstatement under the statute. Well, this goes to the exhaustion argument. I know, I know. But there's other exceptions, too. Remember, a very important fact about this case is we did not run to court and just file this. We raised this at the board for every office. I had a 26-page brief we filed for two of them. Give me the exceptions to exhaustion that would apply here. Futility in that case because we raised this at the board, and their ruling was we don't have the forward. We will not hear this motion. We won't hear it. You raised the back pay issue before the board? I did raise the back pay in the 26-page brief that was filed there. It's in the record. All these arguments, all these arguments are in that brief, and even more, actually. And the board's position was we are not going to hear this. So then we went through with the board hearing. Before that, then we decided, well, what is the, from an efficiency standpoint, why go through with this whole merit court hearing, which is expensive, by the way. We admit that. There's witnesses. There's investigation. There's experts sometimes. If we're just going to argue on the back end, if the client were to be fired, that, well, that was all void. So we went to court, and we filed this case because it made sense from an efficiency standpoint and because we believe futility and authority to act-based exceptions were valid bases to do this. But, by the way, there's another reason we believe we didn't have to exhaust here, and that goes back just to the plain language of the Administrative Review Act, which says at least six times, I'll just say from 3-108 as an example. No, I'm sorry. That's the wrong one. 3-103 is the commencement of action. Every action to review a final administrative decision. This was not an action to review. We were not, there was no order or decision we were asking the circuit court to review. We were saying this board has no authority to act. But I'll go on further, actually. The Cook County Sheriff's Merit Court Act, which adopts, it does adopt the ARL. At Section 3-7012, it says the ARL shall apply to and govern all proceedings for the judicial review of any order. So even their adoption of the ARL is geared towards judicial review of an order of the board, which is not this case. Okay. So you, let's, the circuit court said you had to exhaust administrative remedies. She dismissed the whole case for that reason. So, you know, not all claims are treated the same, right? There's a bunch of different claims in there. I just want to make sure I understand everything in your complaint. So let me try to summarize it, and you tell me if I've got it wrong. You've got a number of arguments about the composition of the board. Staggered terms, less than five members, you know, whatever. Some pre, under the old statute, some under the new statute. So I get that. I get your argument about exhaustion for those arguments. And you've got this back pay thing, which is kind of in, it has some questions about authority in it. It's slightly more than that. I think we get that. And then you've got due process claims. As I understand your due process claims, one of them is that we can never get a fair hearing before a board where the sheriff is the prosecutor and the guy who picks the judges. So I understand that as being one of your due process arguments. I understand another one as being specific to this case. This board is mad at us because we've been fighting them in court, and so we don't think they'll give us a fair shake. And then the third thing I see that I think falls under due process is this claim that they're making you pay for your transcripts. Have we covered everything in your complaint? Those are the central issues. I would just emphasize that one of the other alleged compositional defects was improper political balance. Right. No, I wasn't trying to listen at all. There's a bunch of those. That's a key one. Yeah, I understand. I think that is a fair summary. Okay, so because if we're going to, we have to decide whether the exhaustion requirement applies to each one of these, and they're not all the same. So you've made your argument on lack of statutory authority, the composition of the board. I think we understand what you're saying on back pay. On due process, let's just talk about your due process claims for a second. Okay. So one of them is we can never get a fair hearing because the sheriff picks the judges. The prosecutor is picking the judges. Would you characterize that as a facial challenge? Or why does that, why is that an exception to exhaustion? Under which exception? Well, again, going back to the Castaneda exceptions. Yeah, right. There is the, well, I would put that under the futility also because, by the way, at the time we filed this, one of the motivating factors behind that allegation was that we were in court on more than several of these cases, and the merit board was joining the sheriff every single time without exception. Again and again and again, our clients are in court, and there's the merit board before they've had a hearing joining the sheriff, joining the sheriff, joining the sheriff. So that raised the question in my client's mind, well, if they're just going to be with the sheriff on everything in this case, how are we ever going to get a fair shake? But that doesn't sound like a facial challenge. That sounds like an as-applied. So are you raising a facial challenge here? It's not a trick. I'm not trying to trick you, counsel. I'm just trying to understand. It's not really a facial challenge. It is not. Okay. But how does this get past Castaneda? Well, futility. Futility as applied. I think that was the belief as we were processing this case is that we're not going to get a fair shake. At least one of your plaintiffs won. I am aware of that. And that happened recently. And during the processing of this case, that actually happened after we filed the first brief in this case. That is a problem. It doesn't help your clients. It does not help that argument. That's correct. I agree with that. But I will say they're challenging that now. So that's up on ARL, and they're also refusing to pay them back. So David Evans' claim, even though he won at the merit court and they exonerated him, which also hurts the sheriff's argument that these are all bad officers, his claim here is still good. He still wants his back pay. I understand. Based upon the period one problem that we've identified in the briefs. But I'm still stuck on the exhaustion. That's what the circuit judge ruled on, and we can never ignore jurisdiction. We have to decide that. Other issues depends on the resolution of the case, but we have to do jurisdiction. Well, I go back. How does this, they're biased against us because we're litigating this lawsuit in court, and so they're mad at us and they're going to screw us. How does that survive the exhaustion, Doctor? Futility under destiny. We believe it would be futile to do this. Plus, Judge, I have to go back. We filed these extensive motions before the board raising all this, giving them the opportunity, and they said we won't hear it. I understand. Now, if you're at the board and you've got a client and you see that treatment of your, what I thought was very comprehensive motion, how are we to infer at that time that we are going to get a fair hearing? What about this argument about the transcript fee? Okay. They, during the middle of this litigation, there was a sudden amendment to the Cook County Sheriff's and Mayor's Board Rules and Regulations. It came out of nowhere. I believe it was in February 2018. But how does that survive the estimate? How do you get to just go straight to court with that? Well, I think that would be a facial challenge to that particular rule and regulation because now these transcripts are cheap. For the oral plaintiffs, they had nine days of hearing, and now we have to go and either sit at the board and review nine days of hearing transcripts or we have to pay, I don't know how much those would cost, thousands of dollars. Does that impact your right to seek administrative review? When the board has to, let me rephrase that. I didn't really say that very well. Does the board have to provide a copy on administrative review? They do on administrative review. They have to provide the record. That's how they answer an administrative review complaint, right? They file a record. So they printed transcripts of all those things. Well, if I may, the board also imposed a rule in about February 2018, if I remember, maybe a little earlier, that the parties now have to submit proposed findings of fact with citations to the record. This is at the board. So at the point in time where you have no idea how the board is going to rule on your case, now you have to actually submit a document with proposed findings of fact. So it's not like we can just wait for administrative review and get the record. We have to do that. So your argument isn't that we're pretty much prevented from seeking administrative review. You're saying we're not getting a fair hearing because we want those transcripts during the hearing and we want them at the end of the hearing to write our closing briefs. I think it's more geared towards the sudden requirement in the middle of our client's litigation that now we have to potentially pay thousands of dollars just to do our proposed findings of fact. We're not taking the position that you should be entitled to those as the hearing goes. It's the proposed findings of fact at the point in time that's important for that argument. So before I leave exhaustion, though, I've cited the Newkirk v. Bygard, Illinois Supreme Court case extensively in the brief. I'll quote, An exception to exhaustion exists where the agency rule or order being challenged is not being authorized by statute. This is a proper issue to be determined by declaratory judgment. And then we have, of course, the Viazzi and the Stone Street cases, both of which recognize the ability of a declaratory judgment in the Viazzi case to challenge the legality of an agency's actions, and in the Stone Street case, very recently, to challenge avoid judgment of a Department of Administrative hearings. So we also have case law to support this theory that on an issue like this, we do not have to go through the process, waste the resources of doing a whole hearing, just then after the fact, after all that's done, to now challenge the validity and firmness of the process. One final point on exhaustion, because I know that was Judge Hall's order downstairs, is CASTA-ADA also recognized an exception where if the agency expertise is not really required to resolve the issue in play, then CASTA-ADA suggests you also don't have to exhaust in that particular circumstance. Now I go back to Table 1 and 2 where this Court said very clearly the issue of the interpretation of Section 7000.7002 is not owed any deference by this Court at all. They say that in both those decisions. So that was another reason why we believe we don't have to exhaust this at the Board, because the Court's going to say we're not going to defer to the agency on this, which we took to mean this is not an issue involving the agency expertise. So in summary, there's really three exceptions, authority to act, exception to exhaustion, futility exception to exhaustion, and agency expertise does not involve exception to exhaustion. So I want to move to a different topic, which is this idea of chaos that the Sheriff raised in their briefs, and that came up in Cruz, Lopez, and Acevedo. We can't ignore that, obviously. Again, this is a situation where if there is chaos, it was something the Sheriff had a chance to prevent. Now maybe whatever the legitimacy of that rationale for old cases, for Acevedo, Lopez, or Cruz, or Mr. Taylor, here he had the opportunity to put a stop to this, the problems at the Board, to basically say, halt everything, we're going to completely audit this, we're not going to suspend without pay, maybe we'll suspend with pay, and this is in the pre-December 2017 period. But we didn't do that. And now we have all these officers who lost, in the Goral case, more than a year of their livelihood just to find out, well, this Board has been confirmed. So if there's... So does that argument go, though, more to the de facto officer issue, as opposed to the chance that she... It does go to the de facto officer issue, which, again, we felt we had to talk about this in the brief because it's been coming up in the other cases. Formally, we don't believe the de facto officer doctrine applies at all in this case because, again, it's not already terminated officers. And the Andre versus Lauer, the D.C. Circuit case, which Acevedo talked about extensively, and this is great, in Acevedo they say, the D.C. Circuit says the test for de facto officer is, if you raise... You've got to raise the issue at or near the time. Well, we have done that over and over again at the Board and the Circuit Court. No one can say our plaintiffs did not raise this issue at or near the time. We did it. That's distinguishing point number one between our plaintiffs and the Acevedo plaintiff. Number two, the Acevedo case also talks about, well, this is only a challenge to Rosales, all that wound up being at the end of the day, and because the other plaintiffs in that case were dismissed, there was no way to tie any of the other defects into plaintiff Acevedo. So basically, as I read that case, it boils down to, this is a challenge to John Rosales' appointment. That's how I read Acevedo. This case is different because the short terms and non-staggered terms and political affiliation and the other problems, they are present and may be tied directly to each one of the plaintiffs completely in this case. So each one of the Board members, Brazier, D'Alecandro, Winters, Bay, just for some period, Nally, Widow, Brady, Mateo, Harris, had short terms during plaintiff's cases there from the beginning. Several of those members, Brazier, D'Alecandro, Bay to some extent, Mr. Widow, had non-staggered terms during plaintiff's cases there. The political affiliation problem was identified during plaintiff's cases there. So this is not a case like Lopez or Cruz or Acevedo where we can say, well, the problem with John Rosales didn't affect your client. As the complaint is fled, these problems were directly present throughout our plaintiff's entire cases. That's distinguishing factor number two from the Acevedo case. Counsel, where does the sheriff derive the authority to spend without pay? I don't think you're challenging it. I'm just, I didn't see it anywhere. I don't see it in the Cook County Sheriff's Merit Board Act either. And I don't believe that the sheriff has express authority in that statute to suspend beyond 30 days, which, this is important, triggers the post-Loudermill case law. And what Loudermill, the progeny of Loudermill, like Bodenstab and some of the other cases, teach us is that if, for a pre-termination or pre-deprivation hearing before property, the validity of that is dependent directly on the validity of the post-deprivation process. This is why historically the sheriff has been able to suspend officers without pay under Loudermill pending a hearing before the Merit Board, which might take over 30 days under this line of Loudermill cases. The problem here is that the post-deprivation process, the Merit Board, is invalid in this case for a host of reasons, which thereby destroys the validity of the entire suspension without pay. So each of the plaintiffs here were suspended without pay? One of the plaintiffs downstairs, Frank Donnis, he was not, but that case was settled for unrelated reasons. So each of them was suspended without pay. So with that, I don't have anything further to add unless the panel has further questions. I think you've been very on-topic. Thank you, Judge. So is that it, Your Honor? Yes, sir. Good morning, Your Honors. Mr. Casper, and may it please the Court, George Sachs on behalf of Sheriff Dart. There are really three main issues that dispose of this appeal. One, as was focused on during the plaintiff's argument, is the issue of exhaustion of administrative remedies. Two is the de facto officer doctrine. And three is the meaning of the legislature's December 2017 amendments to the Merit Board Act. Let me turn first to the issue of exhaustion. There is a well-established legislative framework for review of Merit Board decisions. Merit Board Acts gives the Merit Board exclusive original jurisdiction over disciplinary cases for these officers and others like them. The final decisions of the Merit Board are subject to review under the Administrative Review Law. And under that law, plaintiffs must exhaust their remedies before suing the agency. Judge Hall, below, correctly replies to the agency when they think the statute itself is not being followed. Well, Your Honor, there are exceptions, of course, to the case. Here, the question I have is, in one of the cases I authored, the acts were final acts. You know, went to a term. These acts are not final, so they're attacking the board, it seems to be legitimate. Well, Your Honor, there are three exceptions to the Castaneda exhaustion rule, and we maintain not one of those three exceptions are met here. The first Castaneda exception is the facial challenge to a law or regulation. But that's not what the plaintiffs have done here. In their agreement. Right. He agrees on his oral argument, and he agrees in his reply brief. And the reason why he's not making a facial challenge is he wanted discovery in the circuit court. He served extensive discovery on the Merit Board in the circuit court. There was a motion to quash pending in the circuit court at the time Judge Hall dismissed this case for failure to exhaust. So he doesn't make a facial challenge quite deliberately because he wanted discovery about the Merit Board members, the sheriff, the whole lot of intrusive things that are part of this record. So there's no facial challenge exception. The second Castaneda exception is for futility. Futility means there is no chance of a remedy from the agency. And, in fact, we know the process was not futile for Officer Evans. It was hardly futile for Officer Evans. He was brought before the Merit Board because of a detainee's complaint of excess force. The Merit Board found in his favor and reinstated him to work. But doesn't futility refer to the inability to get the administrative agency to hear your argument? Well, that is also not the case here because the administrative agency, both for Officer Evans and for Schaefer, who was terminated by the Merit Board, actually did hear the argument. They just did not hear it as quickly as plaintiffs demanded they hear it. They took everything up. So the complaint says pretty clearly that the plaintiffs have been raising these arguments about the political composition of the board, you know, all these things about the composition of the board kind of tailor arguments for the old board, for the new board, and that the board has been saying and requesting the relief you would expect of their request, right, dismiss this whole administrative case because this board doesn't have authority. And they have said we're not going to hear those arguments and we can't dismiss things. Is that right? That is not right, Your Honor. It's the record here. Well, that's in the complaint. Right. And you think the complaint is true right now, don't we? You may take judicial notice of documents referred to in the complaint and also of the Merit Board decisions with Schaefer and Evans where the board actually does find itself to be duly appointed. It just waited until the conclusion of the Merit Board cases to do so. It didn't do so at the outset of the Merit Board cases. Okay. Was this some kind of pro forma language, this board being duly appointed here by rules as follows, or was it actually going through the arguments and explaining why they're right? It was a brief argument that I would say speaks for itself. I could just refer, Your Honor, to what they said in the Evans case. So I take it that's not in the record because Evans just happened? Well, and Schaefer happened. Schaefer is mentioned in our reply, in our appellate response brief. And I believe this was a 2-6-19, so I believe we went outside the complaint with affirmative matter that was not in dispute that showed the Merit Board wasn't, in fact, just denying the motion pro forma. It was taking everything under advisement, considering the arguments at the conclusion of the case. So the futility exception, in my view, fails. The Schaefer and Evans decisions reflect that. And, in fact, even after those decisions came down, both of those plaintiffs are concurrently in circuit court for different reasons. Evans is arguing for more relief, perhaps, than the sheriff thinks the Merit Board gave him. And Schaefer is before the circuit court trying to undo his firing. And Schaefer's case is in front of Judge Riley. And there's no basis in this record to argue the pending case in front of Judge Riley is futile. In fact, what you have here is what the Castaneda court cautioned against, which is a skipover. That's their words. I call it a leapfrog over the lower bodies. A leapfrog over the Merit Board and then a leapfrog over the circuit court, which is the forum that's currently, under the administrative review law, looking at Schaefer and looking at Evans. And as for the other four plaintiffs, they are still before the Merit Board. The Merit Board held an evidentiary hearing. The Merit Board has taken it under advisement. There's nothing showing that they, futility with respect to the other four plaintiffs, the ones who haven't yet gotten it. What about that last exception? The last exception? You saved the best for last. Yes, due process. I honestly No, no, no. Oh. No, not due process. Lack of authority. The lack of authority to act. I believe that Mr. Casper is asking for the creation of exception that may not exist. He's trying to wrap it around the notion of subject matter jurisdiction. But I would submit a subject matter jurisdiction challenge is not the same as an appointment challenge. There's no question here that the Merit Board act vested the Merit Board with subject matter jurisdiction over these disciplinary cases. It's simply a question of, well, were the individual agency members properly appointed? It's not really a subject matter jurisdiction challenge. So you're saying they can attack themselves or defend themselves? Well, certainly they should. They have the opportunity to find whether, to make a determination as to whether their own appointments are valid. Does they have authority? Yes. Yes, they would have inherent authority to do that. Counsel Castaneda says, I think his exception number eight to exhaustion, and this is a quote, the agency's jurisdiction is attacked because it is not authorized by statute. Right. That's what the plaintiff is arguing, plaintiff's argument. Right, and I would submit that the agency is authorized by statute. It's authorized by the Merit Board act. It's a question of whether individual members were properly appointed. It's not an attack on the jurisdiction or the enabling acting power of the agency. You think if they are not duly authorized to sit on that board, that that's not a challenge to their jurisdiction based on a lack of statutory authority? It's not a challenge to the subject matter jurisdiction of the Merit Board, and in any event. But jurisdiction in the administrative agency context means the authority to act, right? Well, it means jurisdiction over the subject matter, right? Isn't it whether the agency has had the subject matter before it consigned to it by the legislature for its exclusive review before you go to circuit court? That's one example. Right. I don't know that I would agree that authority to act and authority of an individual agency member to act versus simply the agency as a whole's authority to act are the same thing. I would submit they are not one and the same. And there is no – Castaneda does not say you treat them as one and the same. Castaneda wasn't about agency appointments. And, in fact, I can think of no case involving agency appointments that applies this. Then why would – well, maybe you can answer this this way. Where in statute is the composition of the board stated? We're talking about a statutorily created office. Right. So where in the statute does it define the composition of the board? I'm glad you asked that, Your Honor, because they're in two different parts of the statute. There's 7012, which is the subject matter jurisdiction of the merit board over disciplinary matters. And there's – that's 7012. And then there is 7002, which is the appointment process for naming someone to the agency. And 7002, I would submit, is not a subject to the authority to act challenge. It's something else. It's saying individual members were not properly appointed. And then you have to look to the de facto officer doctrine to see whether that improper appointment still requires you to treat the official agency acts as valid. So that would be my response to the authority to act exception. I will turn very briefly to the other castadata exception for due process. I was honestly confused until this argument about whether plaintiffs were still making a due process argument. They certainly seem to raise it, and then their reply brief says, well, wait a minute, there is no due process argument in this case. Pages 10 and 11 of the reply. The due process argument sits in – What authority does the non-statutorily provided members of the board act? If they are improperly seated or seated inconsistent with what statute provides, what gives them the authority to make any decisions? The de facto officer doctrine. And you think that this case falls squarely within that now? Yes. There was not a final determination in this case, correct? It's not, but let me turn to the de facto officer doctrine, and Cruz is really the critical case here. If you look at plaintiff's complaint, record volume 2C1184 to 1227, the bulk of the appointment challenges in plaintiff's complaint are challenges to the appointments of merit board members who were serving in the 2016-2017 time period. They are – this isn't 25 separate challenges. This is a rehash of the challenge that was brought before the court in Cruz and was rejected by the court in Cruz under the de facto officer doctrine. But in Cruz, these were – Cruz was an officer who had already lost his case. He was on to a final decision. Taylor comes out and he says, hey, that sounds good. I'd like a piece of that too. And a lot of people – that's not – you know, I'm not criticizing Cruz, but that's where the de facto officer doctrine comes in and says, we're not going to let everybody who was ever adjudicated under this board come out of the woodwork now and say, I want that relief. It's just too hard to administer that, so we're not going to do that. But once Taylor comes down, the board can't continue to operate on current cases, can they? Well, can you just ignore that appellate court decision and just keep going and say, forever, de facto officer rule? Well, there's a little bit of a problem here because the board didn't actually do anything to the plaintiffs during this time period. Well, they kept them suspended without pay. Right. They didn't reinstate them. They didn't reinstate their paychecks. Well, the board – I think they might take issue with the fact that we didn't do anything to them. Okay. Well, the board didn't – the board did not – the board received complaints. The plaintiff is saying the board could not receive the sheriff's complaints. Sheriff – okay, but I'm not as concerned about that. Right. I think – and then Justice Hobbs was kind of talking about this, and Justice Smith mentioned it too. For current cases – and I think you're right. I think Sheriff Dart seemed to recognize this, right? Taylor comes down, and he says, oh, my gosh, I've got a board that's illegally constituted. And it went up to the Supreme Court, got vacated. There was some time period where it was in flux. But generally speaking, during this period, it appears – the complaint even seems to say it – that Sheriff Dart's reaction and the board's reaction was we better not do anything right now because our board might not be valid. Well, at least that's what it seems like from the complaint, and that would be a sensible reaction rather than let's just keep going forward. But that's, I think, kind of making the point that we're saying to you, which is it's one thing to talk about dead, old cases and letting them be revived from the graveyard. But if you've got a current case, the board can't just say, boy, that Taylor decision was sure an interesting decision, but de facto officer rule says we can keep going with this illegal board going forward. And so happens here. The board was changed about seven months later. But what if it hadn't been? Under your argument, you could just keep going forever. Nobody could ever challenge it because Percy Taylor won a case one time. That can't be what the de facto officer rule is, can it? No, that is not what I'm arguing here either. But that is the upshot of what you're saying? No, I'm saying this is a rehash of the Cruz challenge. And here is why. These plaintiffs were, Cruz was terminated by the merit board before Taylor came down in May 2017. These plaintiffs were all brought on charges before the merit board, before Taylor came down, the second Taylor decision in May 2017. Up until that time, the sheriff believed that the county had home rule power to approve these interim appointments. There was no knowing violation. There's no evidence in the record of that. And the reason to proceed was in the belief that Taylor would not come down the way it did. And when it did, it left the sheriff while the new legislation was pending. That is why, out of an abundance of caution, after the new legislation was passed in December 2017, amended complaints were filed. We're not conceding that the original complaints were complaints that the merit board had no authority to accept. To the contrary, under the de facto officer doctrine, because Cruz did the exact same thing these plaintiffs did during that 2016-2017 time period, Cruz attacked the appointments of Mateo Harris and Brady, the two merit board members who still had terms of fewer than six years. And this complaint, if you read the complaint, it doesn't allege anything specific about the terms of any merit board members other than Greg Mateo Harris and Patrick Brady. If you look at the specifics, records. That's not the point. Right. The point is that when an appellate court, or for that matter, any court, declares a board invalid, from that moment on, that decision has to be respected. Old cases, we have a de facto officer doctrine. But for current cases, or a brand new case that hasn't even been filed yet, Well, you can't continue to operate in a legal board and say, de facto officer rule can't touch me to those new cases or those current cases. If you can, then tell me where you get that authority. It's not Cruz. Well, Taylor did not address the board during 2016 and 2017 either. It addressed the board during the time period of John Rosales, who was there from 2011 to 2015. Maybe in this record, this record may reflect there were county resolutions that were intended to go back and retroactively reappoint people to six-year terms in the wake of the 2014 circuit court Taylor decision. And it wasn't until the May 2017 Taylor decision came down that the sheriff and county realized, oh dear, the county has no home rule power to do what they did. We need to go to the legislature. You're asking us to have foreseen what Taylor would say before Taylor came down. And once Taylor came down, another one of Plaintiff's objections is people left the merit board and dropped to five members. Well, Taylor left. The sheriff stuck and unable to appoint new merit board members until the new legislation passed because you couldn't fill the interim vacancies. And by the way, Taylor also says that it would allow an exception to itself if the merit board ever were to drop below a quorum of four. So the five-member board could proceed under what I would say is the rule in paragraph 33 of Taylor, which is that you can proceed with a quorum of four board members if you have vacancies. So again, I would submit that this is really a rehash of Cruz. It is the exact same challenge as Cruz. You have two members serving short terms at the time of the 2016 and 2017 time period, Gray-Matteo Harris, Patrick Brady. That's it. These 25 separate challenges are speaking outside the record and outside the complaint or variations of the Cruz challenge because they know they have a problem with Cruz. Really, the problem of non-staggering flows from the six-year terms not being strictly followed. Counsel, can I ask you about the back pay argument? Yes. Before you go. So again, the argument seems to be that under the old version in place at the time, which of 7-0-1-1, that Sheriff Darp could not suspend for more than 30 days unless he initiated a proceeding under, you know, started the hearing process. Is that your understanding of what 7-0-1-1 read at the time? I am not sure that that is correct, Your Honor. I thought that the plaintiffs were alleging that because the board was invalid, the sheriff somehow violated their federal due process rights. The problem is they haven't raised the federal due process claim. Okay. That was just the beginning. Right. They start with the premise that you could not suspend for more than 30 days without charging. Right. And then the sheriff did charge all of these plaintiffs, presumably within those 30 days, but that he did it under a board that at that time, per Taylor, was invalid. So it really isn't a charge. Well, they're challenging the act of filing with the merit board clerk that did the charge. Well, they're saying you started the administrative process before a board that had no authority to hear the case. And so I think what they're saying is it's a nullity. So really you went to you could suspend me for 30 days, but once we got to day 31, if you don't have a board that can hear my case, you've got to reinstate me. But that defect was cured. Tell me why you disagree with that. That defect was cured by the new legislation, which put in place a board that had authority to act. Well, even if that's true, that happened in December of 2017. I mean, the first plaintiff got suspended in February of 2016. So even if you're right that all of this was cured as of December of 2017, when DART puts the new board in after the new statute is passed, that time period between when these people were suspended on day 31 until that curing period, don't they have a claim for reinstatement and therefore back that? No, because there's no allegation here that they didn't get the Loudermill hearing, which is all you need. And, in fact, there's no 1983 claim of the Loudermill violation in this case. Can you elaborate on what you mean by that? Before you put someone on administrative leave, you would give them a Loudermill hearing. That's entirely separate and apart from the merit board process. And the merit board process simply means that the sheriff then files disciplinary charges after the Loudermill hearing, and it's an additional layer of process created by the merit board act and the administrative review law. So I want to be clear. They actually have a hearing? Well, there's no allegation that they didn't, and there's no 1983 allegation. So did they actually have a hearing? Well, there's no allegation that they didn't. Well, no, but that's a different answer. I'm not sure if it is in the record or if I would be speaking outside the record. I believe they all had their Loudermill hearings. So you have a Loudermill hearing before the final hearing on the merits of whether you committed the infraction you're accused of? You have a Loudermill hearing before you file the charges, oftentimes. And that's in this statute? Is this in the county's code? No, but it is something that needs to be jumped through. I thought you said it was in the merit board act. No, no, no, no. I thought the plaintiff was deliberately conflating the Loudermill process. Okay, then I need you to explain this to me. I need somebody to explain this to me. Okay. So Loudermill says what? Loudermill says you just have it. It's not the merit board. You have a hearing, like, with your supervisor, and you're allowed to present your side of the story before you are suspended. That's the federal requirement. The state requirement is an additional layer of process on top of Loudermill. That's the county code. That's 7011 and 7012. That's that hearing with the hearing officer? Yes. So we're outside the federal regime entirely. We're simply under whether it's a matter of state. But have you addressed this argument, the back pay argument? I don't think I've. I don't remember them taking. If I'm missing something. I'm not sure they alleged anything under. They've asked for back pay, and I, you know, it's a complaint. Some complaints are easier to read than others. But what I took from that and from their briefs, and I think Mr. Casper said it, is what I described earlier. They're saying once day 31, you have to charge me. You can suspend me for less than 30 days without charging me and giving me all this process. But if it's a bigger suspension than 30 days, you've got to charge me. And here, you charge me, but you charge me in front of a board that had no authority to hear my case. That's not charging me. That's them. I'm not saying they're right or wrong. That's their argument. Right. I don't believe that is supported in the county code, and it would, in any event, be a problem under the de facto officer doctrine because you would be carving out a new exception to the de facto officer doctrine. We'd be interpreting a statute. That's all we'd be doing. The statute says you can't suspend for more than 30 days. That much is pretty clear without a hearing. Well, the merit board has jurisdiction. No, I don't agree with that reading, Your Honor. Okay. Tell me what it does say. I think it says the merit board has to make a final decision to impose a suspension, to ratify the suspension of beyond 30 days. And on the back pay issue, Your Honor, Taylor mentioned. Wait, wait. At the end of it all. Because it's not the best written statute I've ever read. So you're saying it's not saying that you, after 30 days, you've got to either reinstate me or charge me. You're saying it says it doesn't need to be reviewed by a board unless it's more than 30 days. Yes, exactly. Oh, I see. And I would go further, Your Honor. The merit board can award back pay. That's what the midterm decision says. That's what the Taylor decision says. If, at the end of all this, the plaintiffs prevail, they get their back pay if they ask for it and the merit board awards it. And then they can go to the circuit court and ask the circuit court for back pay. And that is the fundamental problem here. They did not exhaust. They did not allow the process to pay out. There is still an open dispute on the amount of back pay with. . . And what if they lose their case? If they lose it. . . You've still got this back pay argument. Right. Then they would get an award of back pay from the merit board. That is a disputed question of fact that must be presented to the merit board. I mean, how much is the amount of back pay? How much is owed? What is the calculation? Are they mitigating their damages? None of that is in this record because they did not exhaust. They have leapfrogged. You cannot leapfrog. You must go to the agency with these questions. And there is currently a valid, properly constituted agency. And I would now like to speak to the plaintiffs' attacks on the current merit board because they're still claiming that because I believe the legislature has now, as of the 2017 amendments, fixed the Taylor problem, they're claiming a host of new problems that are just wrong as a matter of law. The first argument is that there are four Democrats on the merit board, and that is somehow wrong. The statute says, and I quote, one-half of the members plus one may be from the same political party. So four Democrats on a seven-member board is fine. Right now the merit board has eight members, so I'll bring to the court's attention that five Democrats may serve on an eight-member merit board. Half of eight is four, four plus one is five. So the amended merit board act is unambiguous. There's not a problem having four Democrats there. Let me turn now. Are we reaching the merits of this? No. No, Your Honor. It hasn't been exhausted yet. But if the court decides to, I would submit that they're wrong. But if we found that this was an exception to exhaustion and it was properly in court, the circuit court hasn't heard any of this. She just dismissed on subject matter jurisdiction. If we decide there is subject matter jurisdiction, you don't want us to, but if we did, should we decide the merits of these claims? Well, that's the problem. They are also leapfrogging ongoing circuit court cases. Because there's final merit board decisions with Evans and Schaffer, there are now circuit court cases where that can be raised in the first instance. So I would submit no, Your Honors. You don't have to reach it. In the alternative, if you do decide to reach it, they're completely wrong in their reading of the amended statute. They're reading in a term limit requirement for the chairman of the merit board and secretary and vice chair that does not exist. They're claiming the amended statute terminated every single pending merit board case. There's nothing in the plain language of the statute saying that. Frankly, it comes across as grasping at straws to try to find some new challenge to get out from under the de facto officer doctrine, which, of course, only allows the first challenger, Percy Taylor, to challenge this irregularity. That's what Cruz says is the same irregularity. I would submit that the attack in this complaint is still the same irregularity. The only difference between this case and Cruz's, Cruz was fired by the merit board, so there was even more of an equitable reason to relax the de facto officer doctrine for him, and this court did not do it. What plaintiff is really asking you to do with this 2016-2017 time period is retreat from Cruz. That would open up the door to a wholesale retreat from the de facto officer doctrine that the court has adjudicated in three recent decisions, Lopez, Cruz, Acevedo. I focus on Cruz because Lopez and Acevedo were the earlier time period, the 2011-2015, but this is Cruz all over again. It's just dressed up in different language to avoid the fact that it's Cruz all over again. Let me just say, I would urge this court, as a matter of policy, to continue to apply the de facto officer doctrine in a way that, now that the legislature has corrected this Taylor problem, that the Taylor plaintiff and no others gets relief. Otherwise, you have every single plaintiff with a pending merit board case that was pending in 2016 or 2017 running back into court to try to enjoin the merit board and paralyze the merit board. It might have implications with other administrative agencies. It would clog the circuit courts. It would clog the Supelic Court with additional appeals. The Lopez decision and Cruz decision and Acevedo decisions were wise and well-reasoned and should not be retreated from. Thank you, Your Honor. Thank you. Your Honor, I just have two brief points in rebuttal. First of all, last Thursday, and I did file a supplemental motion with this court seeking judicial notice, and I'm requesting leave to bring this up today because counsel just mentioned that the officers, if indicated by the board, can get back pay at the board. I have sought judicial notice of an email I received from the Sheriff's Counsel for this court last Thursday to me. Counsel, we've received your request for back pay for the time period that Officer David Evans III, who was exonerated, has been on administrative leave without pay. That suspicion went into effect on February 24, 2017. We have reviewed the merit board decision and see no order granting back pay in this matter, and it goes on from there. Again, this is before this court on a pending motion, but I point that out to suggest that the way out of the circle of no relief that counsel is suggesting, that they win their merit board case, we can't get out of it if we do win the merit board case because then the sheriff refuses to give them back pay. Now, it's true that Officer Evans now has a pending mandamus claim, getting back pay, but this is why I say we are now in concentric circles. We can't do this at the board. We can't do this in this case as the circuit court. Then if we win at the board, we have to go up on mandamus to try to get back pay. So in the Evans case, you asked for back pay? I'm sorry? In the Evans case, you asked for back pay? In Evans case, I put records in the trial with the collective bargaining agreement for his wages. So yes. So you can appeal that to the circuit court pursuant to the administrative review law? But then the circle continues, and this goes on and on. Why? For Evans at least. I mean, Evans, it sounds like he won his case, so he wouldn't otherwise go to the administrative review law, but he can say this wasn't a good enough remedy. I appeal it to the circuit court. I'm entitled to back pay, make this whole argument about 7011. The judge will decide. We'll take it up on appeal. Maybe not. Because, Judge, in the circuit court, the sheriff is also arguing that the circuit court can't order back pay under the ARL under the Mitchum case. They're arguing that in numerous cases. They're saying, and they say it in this email, Mitchum, all it authorizes the circuit court under ARL to do is to remand at the board for the determination of back pay, which the sheriff is saying the board didn't order back pay in Evans' case. And this is why we're saying everywhere we go we're met with a roadblock, and it's a basic reinstatement order. So with that, we're asking the court for the release of it in the petition. Thank you. Thank you. It was very interestingly argued, very well argued, and it makes us really have to stop and think about what was said. I'm sympathetic to your case. Thank you.